# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

TOM PALMER, derivatively on behalf
of MOHAWK INDUSTRIES, INC.,

                    Plaintiff,

v.

JEFFREY S. LORBERBAUM,
FRANK H. BOYKIN, GLENN R.
LANDAU, WILLIAM
CHRISTOPHER WELLBORN, FILIP
BALCAEN, KAREN A. SMITH
BOGART, BRUCE C.
BRUCKMANN, RICHARD C. ILL,
JOSEPH A. ONORATO, WILLIAM
H. RUNGE III,

                    Defendants,

and

MOHAWK INDUSTRIES, INC.,

                    Nominal Defendant.

Civil Action No.: 4:20-cv-00110-MHC

[*Caption continues on next page*]

| | |
|---|---|
| JOE THARAYIL, Derivatively on Behalf of Mohawk Industries, Inc., | Civil Action No. 4:20-cv-00185-ELR |
|         Plaintiff, | |
| v. | |
| JEFFREY S. LORBERBAUM, BRIAN CARSON, FRANK H. BOYKIN, GLENN R. LANDAU, KAREN A. SMITH BOGART, FILIP BALCAEN, BRUCE C. BRUCKMANN, JOSEPH A. ONORATO, WILLIAM H. RUNGE III, W. CHRISTOPHER WELLBORN, and RICHARD C. ILL, | |
|         Defendants, | |
| and | |
| MOHAWK INDUSTRIES, INC., a Delaware Corporation, | |
|         Nominal Defendant. | |

**UNOPPOSED MOTION OF DERIVATIVE
PLAINTIFFS JOE THARAYIL AND TOM PALMER FOR
CONSOLIDATION AND APPOINTMENT OF LEAD
<u>COUNSEL AND MEMORANDUM IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

I.   FACTUAL AND PROCEDURAL BACKGROUND ......................................2

  A.  Factual Background .........................................................................2

  B.  Procedural Background ...................................................................5

II.  ARGUMENT ........................................................................................6

  A.  The Derivative Actions Should Be Consolidated............................6

  B.  The Court Should Appoint Johnson Fistel and BES as Lead Counsel............9

    1.  Relevant Factors Impacting Designation of Lead Counsel.......................13

      a.  Johnson Fistel, LLP ..............................................................15

      b.  Bragar Eagel & Squire, P.C. ................................................19

III. CONCLUSION ...................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Dollens v. Zionts*,
  Nos. 01 C 5931, 01 C 2826,
  2001 WL 1543524 (N.D. Ill. Dec. 4, 2001) ................................................... 9, 11

*Hargett v. Valley Fed. Sav. Bank*,
  60 F.3d 754 (11th Cir. 1995) .....................................................................6

*In re Air Crash Disaster at Fla. Everglades*,
  549 F.2d 1006 (5th Cir. 1977) ...................................................................7

*In re Comverse Tech., Inc. Derivative Litig.*,
  No. 06-CV-1849 (NGG) (RER),
  2006 WL 3761986 (E.D.N.Y. Sept. 22, 2006) .....................................................10

*In re Showa Denko K.K.*,
  953 F.2d 162 (4th Cir. 1992) ...................................................................10

*In re Terazosin Hydrochloride Antitrust Litig.*,
  220 F.R.D. 672 (S.D. Fla. 2004) ............................................................. 11, 14

*Iron Workers Mid-South Pension Fund v. Oberhelman*,
  No. 1:13-cv-01104SLD-JAG,
  2014 WL 5801508 (C.D. Ill. Nov. 7, 2014) .......................................................10

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................................6

*Liberacki v. Kroger Co.*,
  No. 1:13-CV-00059-JCF,
  2013 WL 12065414 (N.D. Ga. Aug. 20, 2013).....................................................7

*Millman v. Brinkley*,
  Nos. 1:03-cv-3831-WSD, 1:03-cv-3832-WSD, 1:04-cv-0058-WSD,
  2004 WL 2284505 (N.D. Ga. Oct. 1, 2004)................................................. 7, 9, 11

*Molever v. Levenson,*
  539 F.2d 996 (4th Cir. 1976) ................................................................8

*Nally on behalf of 3D Systems Corp. v. Reichental,*
  No. 15-cv-03756-MGL,
  2017 WL 1135122 (D.S.C. Mar. 27, 2017).........................................18

*Sumter v. Quality Project, LLC,*
  No. CV416-108 at *1 (S.D. Ga. May 18, 2016)....................................6

## STATUTES, RULES & OTHER AUTHORITIES

3 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 9.35 at 388
  (4th  ed. 2002)......................................................................................11

9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*
  § 2385 Consolidation – Proceedings in Consolidated Cases (3d ed. 2008)...........9

Fed. R. Civ. P. 23(g) ...................................................................... 13, 14

Fed. R. Civ. P. 42(a)............................................................................6, 8

*Manual For Complex Litigation,* § 10.22 (4th ed. 2004)................................ 10, 13

*Manual For Complex Litigation,* § 10.221 (4th ed. 2004)......................................13

*Manual For Complex Litigation*, § 40.22 (4th ed. 2004) ......................................13

*Manual For Complex Litigation*, § 33.22 (2nd ed. 1985) ......................................10

*Manual For Complex Litigation*, § 33.25 (2nd ed. 1985) ......................................10

Moore's Federal Practice §§ 20-22 (3d ed. 1995) ......................................8

In accordance with Local Rule 7.1, plaintiffs Joe Tharayil and Tom Palmer (together, "Derivative Plaintiffs"), respectfully and through their undersigned counsel of record, hereby submit this unopposed motion ("Motion") for consolidation of the above-captioned stockholder derivative actions (the "Derivative Actions") and for the appointment of Johnson Fistel, LLP ("Johnson Fistel") and Bragar Eagel & Squire, P.C. ("BES") as Lead Counsel.[1]  As detailed herein, the substantially similar facts, parties, and claims alleged by Derivative Plaintiffs in their respective actions warrant consolidation.  Additionally, the proposed Lead Counsel, Johnson Fistel and BES, each have distinguished themselves in the area of complex shareholder litigation over many years and are well-equipped to lead this litigation. As such, and for the reasons stated herein, Derivative Plaintiffs respectfully request that the Court to grant their motion.

---

[1]  Each action names the following individual defendants: Jeffrey S. Lorberbaum, Frank H. Boykin, Glenn R. Landau, Karen A. Smith Bogart, Filip Balacaen, Bruce C. Bruckmann, Joseph A. Onorato, William H. Runge III, W. Christopher Wellborn, and Richard C. Ill (together with Brian Carson, the "Individual Defendants"). *Tharayil v. Lorberbaum, et al.*, No. 4:20-cv-00185-ELR (the "Tharayil Action") also names individual defendant Brian Carson.  Mohawk Industries, Inc. ("Mohawk" or the "Company") is named as a nominal defendant in both actions.

1

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Background

Mohawk, a Delaware corporation headquartered in Calhoun, Georgia, is the world's largest manufacturer of conventional flooring products, such as carpet, tile, stone, and wood, with its Flooring North America segment as its largest, which offers floor covering product lines, including carpets, rugs, laminate, hardwood flooring, sheet vinyl, and Luxury Vinyl Tile ("LVT").  *See* ECF. No. 1, Tharayil Action Verified Shareholder Derivative Complaint ("Tharayil Compl."), ¶¶1, 29; *Palmer v. Lorberbaum, et al.*, No. 4:20-cv-00110-MHC (N.D. Ga.) (the Palmer Action), filed May 18, 2020, at ECF. No. 1, Verified Shareholder Derivative Complaint ("Palmer Compl." and together with the Tharayil Compl., the "Complaints"), ¶¶2, 20.  Recently, consumers worldwide have increasingly opted to use LVT as an alternative to more traditional wood floor coverings because it is waterproof, lasts longer, and is less expensive to install than traditional flooring products, but still looks like wood, stone, or ceramic tile.  Tharayil Compl., ¶3; Palmer Compl., ¶4.  In a short amount of time, LVT has gone from a relatively unknown product to comprising approximately 15% of all flooring sales in the United States.  Tharayil Compl., ¶¶4, 47-48; Palmer Compl., ¶¶5, 42.

2

The Complaints allege that Defendants caused or otherwise allowed the Company to mislead investors and the market by publicly misstating or failing to disclose, among other things: (i) Mohawk's reported record quarterly sales were artificially inflated by the "Saturday Scheme"; (ii) Mohawk's warehouses were filled with LVT that could not be sold or which was returned since much of Mohawk's U.S.-made LVT was unsalable scrap, which the Company nonetheless carried in inventory and refused to write off; and (iii) Mohawk was performing unnecessarily long production runs to lower the per-unit cost of production and increased margins, even though there was insufficient demand for the finished products. Tharayil Compl., ¶¶16, 54-59, 60-63; Palmer Compl., ¶¶47-57, 58-65.

The Complaints allege that, as a result of the foregoing, the Company's stock traded at an artificially high price. Tharayil Compl., ¶17; Palmer Compl., ¶76. Additionally, according to the Tharayil Complaint, while the Company's stock price was artificially inflated, certain Individual Defendants allegedly exploited their positions as corporate fiduciaries of the Company and sold their personal stock holdings for millions of dollars in insider profits while in possession of material, adverse, and non-public information regarding the Company's operations and business prospects, while at the same time approving and executing a $443M share repurchase plan. Tharayil Compl., ¶¶18, 31, 33, 69-70.

The Complaints further allege that on April 28, 2017, Mohawk hosted a conference call with investors to discuss the status of its business and its financial results for the first quarter of 2017 during which it touted "record" sales and operating margins, each attributed to legitimate business factors.  Tharayil Compl., ¶¶73-83; Palmer Compl., ¶¶47-49.  According to the Complaints, on July 28, 2017, Mohawk hosted another conference call with investors to discuss the status of its business and its financial results for the second quarter of 2017, during which the Company again announced all-time record sales and attributed its quarterly net sales gain to solely legitimate business factors, while attributing the Company's rising inventory and slow turnover to "chasing demand."  Tharayil Compl., ¶¶84-94; Palmer Compl., ¶¶50-51.  The Complaints allege that Mohawk would host several more conference calls and issue press releases that continued to mask the deceptive and unsustainable business practices to hide declining customer demand for its conventional flooring products.  Tharayil Compl., ¶¶95-150; Palmer Compl., ¶¶52-57.

The Complaints allege that the truth about the Company's growth and business practices began to emerge on July 26, 2018, when Mohawk announced a substantial EPS miss from its own guidance, attributed to lower than anticipated sales and margins.  Tharayil Compl., ¶¶152-157; Palmer Compl., ¶58.  The

disclosures from July 26, 2018 and onward allegedly contradicted the statements made by the Company's senior officers on the previous earnings calls, during which Defendant Lorberbaum and other executives had assured investors and analysts that the Company's inventory and production issues had already been addressed, and that Mohawk was seeing record sales.  Tharayil Compl., ¶¶151-166; Palmer Compl., ¶59-65.

The Complaints allege that as a result of Defendants' alleged misconduct, the Company's stock price has deteriorated, erasing $9 billion in market capitalization and irreparably damaging Mohawk's corporate image and goodwill.  Tharayil Compl., ¶¶166-167; Palmer Compl., ¶¶66-68.

### B.    Procedural Background

The Palmer Action, filed on May 18, 2020, and the Tharayil Action, filed on August 6, 2020, are brought by the Derivative Plaintiffs on behalf of nominal defendant Mohawk against Defendants.[2]  Derivative Plaintiffs allege that the Individual Defendants, *inter alia*, breached their fiduciary duties to the Company by making false and misleading statements to stockholders, thereby artificially inflating the Company's stock price and, with respect to certain Individual Defendants, by

---

[2] Defendants have agreed to waive service of the Summonses and Complaint in both Derivative Actions, but expressly reserve all of their defenses to the claims asserted by Derivative Plaintiffs.

engaging in misappropriation of corporate information and unlawful insider trading of personal Mohawk stock holdings.   Derivative Plaintiffs further assert that a stockholder demand to bring the asserted claims is excused as futile.

## II.   ARGUMENT

### A.   The Derivative Actions Should Be Consolidated

Derivative Plaintiffs request that this Court consolidate the two Derivative Actions—the Tharayil Action and the Palmer Action—under Fed. R. Civ. P. 42(a), which provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."   The power to consolidate related actions falls within the authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."   *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Sumter v. Quality Project, LLC*, No. CV416-108 at *1 (S.D. Ga. May 18, 2016) (citing *Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 765-66 (11th Cir. 1995) ("The proper solution to problems created by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court would be to consolidate them under Rule 42(a).")); *Liberacki v. Kroger Co.*, No. 1:13-CV-00059-JCF, 2013 WL 12065414, at

*2 (N.D. Ga. Aug. 20, 2013) (where "[t]here is no dispute that the two actions involve the same occurrence, . . . they share the common legal and factual overlap that frequently makes consolidation appropriate . . . [and] the most efficient way to proceed").

Courts have recognized that consolidation of similar shareholder derivative actions can be particularly beneficial, helping to "avoid needless duplication of time, effort and expense . . . in discovery and at trial." *Millman v. Brinkley*, Nos. 1:03-cv-3831-WSD, 1:03-cv-3832-WSD, 1:04-cv-0058-WSD, 2004 WL 2284505, at *2 (N.D. Ga. Oct. 1, 2004) (citing *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1014 (5th Cir. 1977)).  Furthermore, "[w]hen consolidation is appropriate, it is also appropriate to order future consolidation of any later filed similar shareholder derivative action." *Millman*, 2004 WL 2284505, at *2.

Consolidation is clearly appropriate here.  The Derivative Plaintiffs have each filed shareholder derivative actions on behalf of Mohawk against the same Defendants.  Both Derivative Actions allege claims for breach of fiduciary duties, waste of corporate assets, and unjust enrichment arising out of the same conduct. The Derivative Actions further raise common questions of law and fact, and discovery in each matter will be substantially similar, thus avoiding duplication of effort by the parties. *See Millman*, 2004 WL 2284505, at *2.  Consolidating the

Derivative Actions would streamline and simplify pretrial motions, discovery proceedings, and clerical and administrative management, and generally reduce the confusion and delay that would result by separately prosecuting related cases of this nature. *See* Moore's Federal Practice §§ 20-22 (3d ed. 1995). And because Defendants do not oppose consolidation, there is no risk of prejudice to any party. Thus, the Derivative Actions should be consolidated under Fed. R. Civ. P. 42(a).[3]

Derivative Plaintiffs respectfully submit that if the Derivative Actions are consolidated, every pleading filed in the consolidated case (the "Consolidated Derivative Action"), or any separate action included herein, should bear the following caption:

---

[3] Although consolidation of the Derivative Actions is appropriate under Fed. R. Civ. P. 42(a), these actions are not suitable for consolidation with the securities class action lawsuit filed against the Company and certain of its senior executives in this Court, captioned: *Public Employee's Retirement System of Mississippi v. Mohawk Industries, Inc., et al.*, No. 4:20-cv-00005-ELR (N.D. Ga.) (filed January 3, 2020) (the "Related Securities Class Action"). Shareholder derivative actions and securities fraud class actions do not involve common questions of law and fact for purposes of consolidation, despite some overlap in parties, subject matter, or issues. *See, e.g.*, *Molever v. Levenson*, 539 F.2d 996, 1003 (4th Cir. 1976) (holding that consolidation of a securities action, a derivative action, and a defamation action did not comport with the aim of Fed. R. Civ. P. 42(a) and the effects of the consolidation were "severely harmful and so serious as to require vacation of the verdicts and reversal of the judgments in this segment of the litigation").

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | |
|---|---|
| IN RE MOHAWK INDUSTRIES, INC. DERIVATIVE LITIGATION | ) Lead Case No.: 4:20-cv-00110-MHC |
| ———————————————— | ) (Derivative Action) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) |
| ———————————————— | ) |

Further, Derivative Plaintiffs propose that the files of the Consolidated Derivative Action be maintained in one master file, under Lead Case No. 4:20-cv-00110-MHC.  Finally, Derivative Plaintiffs submit that if consolidation is granted, the order granting consolidation should apply to each case arising out of the same, or substantially the same, transactions or events as the Consolidated Derivative Action, which is subsequently filed in, removed to, or transferred to this Court.

## B.    The Court Should Appoint Johnson Fistel and BES as Lead Counsel

It is well-established that a court which has consolidated related actions before it may also appoint counsel to direct, manage, and prosecute a complex case.  *See* 9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2385 Consolidation – Proceedings in Consolidated Cases (3d ed. 2008); *Millman*, 2004 WL 2284505, at *3 (citing *Dollens v. Zionts*, Nos. 01 C 5931, 01 C 2826, 2001 WL 1543524, at *5 (N.D. Ill. Dec. 4, 2001)); *see also In re Showa Denko K.K.*, 953 F.2d

9

162, 165 (4th Cir. 1992) ("multiplicity of suits requires that the district court be allowed to combine procedures, appoint lead counsel, recognize steering committees of lawyers, limit and manage discovery, etc. to minimize expense to all litigants and to provide judicial efficiency") (citing *Manual For Complex Litigation*, §§ 33.22, 33.25 (2d ed. 1985)).  Furthermore, the *Manual For Complex Litigation* recognizes the benefits of appointing lead counsel in complex, multiparty litigation:

> Complex litigation often involves numerous parties with common or similar interests but separate counsel.  Traditional procedures in which all papers and documents are served on all attorneys, and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily.  Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems.

*Manual for Complex Litigation*, § 10.22 (4th ed. 2004), Coordination in Multiparty Litigation – Lead/Liaison Counsel and Committees.[4]

---

[4] *See Iron Workers Mid-South Pension Fund v. Oberhelman*, No. 1:13-cv-01104-SLD-JAG, 2014 WL 5801508, at *2 (C.D. Ill. Nov. 7, 2014) (in shareholder derivative actions, court may "appoint a lead counsel only, on the theory that the action is filed on behalf of the company, not a particular plaintiff"); *see also In re Comverse Tech., Inc. Derivative Litig*., No. 06-CV-1849 (NGG) (RER), 2006 WL 3761986, at *1 (E.D.N.Y. Sept. 22, 2006) ("[m]any courts . . . have consolidated derivative actions, appointed lead counsel, but have not appointed a lead plaintiff.").

In selecting lead counsel, the "guiding principle" is who will "best serve the interest of the plaintiffs." *Millman*, 2004 WL 2284505, at *3. The pertinent criteria include counsel's experience and prior record, the stage of the proceedings, and the nature of the claims alleged. *Id.* (citing 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 9.35 at 388 (4th ed. 2002)); *see also In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (the "most persuasive" factor may be counsel's "experience in, and knowledge of, the applicable law in this field"). Courts may also consider the quality of the pleadings filed. *Millman*, 2004 WL 2284505, at *3 (citing *Dollens*, 2001 WL 1543524, at *5).

Here, Derivative Plaintiffs propose that the Court exercise its discretion to appoint Johnson Fistel and BES as Lead Counsel. As Lead Counsel, Johnson Fistel and BES are committed to managing the derivative claims fairly and efficiently.

Specifically, as suggested in the *Manual For Complex Litigation*, and as implemented in the attached proposed Order Consolidating Related Actions and Appointing Lead Counsel (the "Proposed Order"), Johnson Fistel and BES would be charged with the following representative duties as Lead Counsel in the Consolidated Derivative Action:

a.  to promote the orderly and efficient conduct of the Consolidated Derivative Action and to avoid unnecessary duplication and unproductive efforts;

11

b.    to conduct all pretrial, trial, and post-trial proceedings;

c.    to sign all pleadings, motions, briefs, discovery requests or objections, subpoenas, or notices;

d.    to determine and present in motions, briefs, oral argument, or such other fashion as may be appropriate, as to all matters arising during pretrial, trial, and post-trial proceedings;

e.    to act as spokespersons for the Derivative Plaintiffs at pretrial conferences;

f.    to conduct or coordinate discovery on behalf of the Derivative Plaintiffs, consistent with the requirements of the Federal Rules of Civil Procedure, including the preparation of interrogatories, requests for production of documents, requests for admissions, and the examination of witnesses in depositions, as well as any motion practice related thereto;

g.    to enter into stipulations necessary for the conduct of the litigation with opposing counsel;

h.    to make all work assignments and supervise them;

i.    to monitor the activities of all counsel and to implement procedures to ensure that schedules are met and unnecessary expenditures of time and funds are avoided;

j.    to collect time and expense reports from each firm in the Consolidated Derivative Action, including paralegals and any other staff members whose time is expected to be included in any fee petition;

m.    to employ and consult with experts, if and when necessary;

n.    to call meetings among counsel when deemed appropriate;

o.    to conduct settlement negotiations with defense counsel, if and when appropriate;

p.    to ensure that the Derivative Plaintiffs and their counsel are kept informed of the progress of this Consolidated Derivative Action as necessary; and

q.    to otherwise coordinate the work of plaintiffs' counsel to advance the derivative claims in this Consolidated Derivative Action.

*See* Proposed Order (attached hereto); *see also Manual For Complex Litigation,*

§ 10.221.

Descriptions of Johnson Fistel and BES are set forth below, and clearly demonstrate they are qualified to lead this case. Derivative Plaintiffs respectfully submit this designation will promote the orderly progress of this Consolidated Derivative Action and ensure it is prosecuted in an efficient and coordinated fashion.

### 1.    Relevant Factors Impacting Designation of Lead Counsel

The Proposed Order implements the procedures suggested by the *Manual For Complex Litigation*, and codified in Fed. R. Civ. P. 23(g), by designating Lead Counsel for Derivative Plaintiffs. *See Manual For Complex Litigation,* §§ 10.22, 40.22. As stated in the *Manual For Complex Litigation*, in determining lead counsel, the Court should "conduct an independent review [] to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." *Id.* at § 10.22. The most important factor is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* at § 10.221.

13

With respect to the first Fed. R. Civ. P. 23(g) factor, Johnson Fistel and BES have already taken substantial steps in prosecuting this Consolidated Derivative Action, such as by conducting an investigation into the facts of the case, which included, *inter alia*, a review of the Company's financial statements, press releases, SEC filings, and investor communications.  Johnson Fistel and BES have each filed a detailed and thorough complaint in pursuing the Derivative Actions on behalf of the Company.  Based on their extensive experience in bringing and pursuing derivative claims such as those asserted here, Johnson Fistel and BES fully understand the substantial investment of time and resources necessary to properly pursue and lead this Consolidated Derivative Action, and are committed to making the necessary investment.

Courts generally consider the second and third Fed. R. Civ. P. 23(g) factors most important.  *See, e.g.*, *In re Terazosin Hydrochloride*, 220 F.R.D. at 702 (explaining that under the Fed. R. Civ. P. 23(g) context, the "most persuasive" factor in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field").  As demonstrated below, Johnson Fistel and BES are uniquely qualified to serve as Lead Counsel in this Derivative Action.

### a. Johnson Fistel, LLP

Johnson Fistel has a long-standing track record of achieving excellent results in litigation throughout the country on behalf of corporations and their shareholders. Indeed, Johnson Fistel has a sterling reputation in the field of shareholder litigation, with a long track record of success in derivative actions like this one and has the resources to litigate this Consolidated Derivative Action to trial, if necessary.  A copy of Johnson Fistel's firm resume is submitted herewith as Exhibit A.

Because of its experience representing *both* shareholders *and* corporations, Johnson Fistel stands apart from other plaintiffs-side securities firms in this arena. Prior to forming his law firm in 2004, managing partner Frank Johnson was a partner at Sheppard, Mullin, Richter & Hampton, LLP, a 750-lawyer international firm, where he represented publicly traded companies in defending representative actions. Ex. A at 2.  This prior experience carried over into his current practice—Mr. Johnson has been retained not only by shareholders, but also by publicly-traded companies to pursue former directors for breaches of fiduciary duty in a number of matters.

For example, in February 2012, Johnson Fistel filed a derivative action on behalf of Powerwave Technologies, Inc. ("Powerwave") in California, where the company is based.  *Id.* at 29.  When the company went into bankruptcy, Johnson Fistel, based upon its track record of success, was retained by the U.S. Chapter 7

Trustee of Powerwave, and approved by the U.S. Bankruptcy Court for the District of Delaware in *In re Powerwave Technologies, Inc.*, Case No. 13-10134 (MFW) (Bankr. D. Del.).  *Id.*  In that role, Johnson Fistel secured a $5.5 million settlement for the estate, which was approved on August 12, 2015.  *Id.*

The Powerwave matter followed on the heels of a similar matter where the U.S. Chapter 7 Trustee of Artes Medical, Inc. ("Artes") in San Diego retained Mr. Johnson to pursue claims for breach of fiduciary duty against Artes' former officers and directors.  After years of hard-fought litigation on behalf of the estate in bankruptcy, Mr. Johnson negotiated a $3 million settlement, which the bankruptcy court approved.  *Id.* at 39.  In finding that "[t]here's no question in my mind that this settlement is in the best interest of this Estate," the Honorable Laura S. Taylor stated that, "I want to compliment Mr. Johnson, and I want to compliment on the successful recovery for the Estate.  The creditors thank you, and I thank you."  *Id.*

Johnson Fistel's recent successes include *In Re Flowers Foods, Inc. Securities Litigation*, No. 7:16-CV-00222-WLS (M.D. Ga.), a securities class action case alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934, wherein Johnson Fistel's client was appointed Lead Plaintiff and the firm was appointed Lead Counsel under the Private Securities Litigation Reform Act of 1995. A $21 million class settlement became final on January 10, 2020.  At the hearing on

16

final approval of the settlement, Judge W. Louis Sands expressed his satisfaction with the settlement and offered the following commentary:  "I'd also just like to acknowledge just really the professional way you all handled this case . . . and I think it is that type of substantial work from opposing sides that I think that is what we look at a settlement that both sides of this case have been well represented and represented so the Court is satisfied that it has been in the hands of people who knew what they were doing . . . ." *Id*. at 16.

Similarly, in *Bagot v. Bracken, et al.*, Case No. 11C5133 (Tenn. Cir. Ct., 6th Cir.), where, serving as sole Lead Counsel in a case brought against certain current and former officers and directors of HCA Holdings, Inc. ("HCA"), the largest private hospital chain in the country, Johnson Fistel secured a settlement which included a payment of $19 million to the company, the appointment of a new independent director, and implementation of significant corporate therapeutics. *Id*. at 35.  In *In re MannKind Corporation Derivative Litig.*, Lead Case No. 11-cv-05003-GAF-SSx (C.D. Cal.), after two years of litigation, Johnson Fistel was able to resolve the case on favorable terms with the implementation of significant corporate therapeutic changes, including the creation of a new Board-level Disclosure & Controls Committee and significant enhancements to financial reporting requirements. *Id*. at 37.  Yet another example includes *Singh v. Hsu*, Case No. 1-13-cv-243247 (Cal.

17

Super. Ct., Santa Clara Cnty.), where Johnson Fistel secured a significant settlement on behalf of Impax Laboratories, Inc. requiring the implementation of corporate governance reforms, significantly enhancing reporting and oversight at the Board, officer, and employee level. *Id.* at 38.

Courts have also recognized Johnson Fistel's capabilities in the context of shareholder derivative litigation. For example, in *In re Heelys, Inc. Derivative Litigation*, Case No. 3:07-CV-1682 (N.D. Tex.), Judge Kinkeade noted that the "quality of representation by the [Johnson Fistel] was witnessed first-hand by this Court through their articulate, high quality, and successful pleadings. Moreover, as shown by their excellent efforts in this case, [Johnson Fistel] are dedicated to vindicating the rights of shareholders." *Id*. at 40. In *Nally on behalf of 3D Systems Corp. v. Reichental*, No. 15-cv-03756-MGL, 2017 WL 1135122 (D.S.C. Mar. 27, 2017), a case in which Johnson Fistel was appointed as lead counsel in a consolidated shareholder derivative action, Judge Lewis complimented the firm and noted that the firm "possess[ed] extensive experience and impressive records of success in cases similar to the Related Actions" and "ha[s] prosecuted the litigation with well-pled and thorough pleadings." *Id*. at *3.

Recently, Johnson Fistel was appointed lead counsel in the following shareholder derivative actions: (i) *In re Twitter, Inc. Shareholder Derivative Litig.*,

No. 18-cv-62-MN (D. Del.); (ii) *In re CoreCivic, Inc. Shareholder Derivative Litig.*, Lead Case No. 3:16-CV-03040 (M.D. Tenn. Dec. 21, 2016); (iii) *In re United States Steel Corporation Derivative Litig.* No. 2:17-cv-01005-CB (W.D. Pa.); (iv) *In re Exxon Mobil Corporation Derivative Litig.,* Civil Action No. 3:19-cv-1067-K (N.D. Tx.; (v) *In re Costco S'holder Derivative Litig.*, No. 19-2-04824-7 (Wash. Super. Ct., King Cnty.); (vi) *In re HD Supply Holdings, Inc. Derivative Litig.*, No. 1:17cv-02977-MLB (N.D. Ga.); (vii) *Whitten v. Clarke, et al. (Fleetcor Technologies, Inc. Derivative Litig.)*, No. 1:17-cv-02585-LMM (N.D. Ga.); (viii) *In re Southern Company S'holder Derivative Litig.*, No. 1:17-cv-00725-MHC (N.D. Ga.); and (ix) *In re Six Flags Entertainment Corporation Derivative Litig.*, Civil Action No. 4:20-cv-00262-P (N.D. Tx.).

These are but a few of Johnson Fistel's most recent lead counsel appointments and successes. In sum, Johnson Fistel possesses the financial resources, personnel, and substantive expertise necessary to litigate the Derivative Actions vigorously and effectively and in the best interests of Mohawk and its shareholders.

### b.    Bragar Eagel & Squire, P.C.

BES attorneys have decades of experience litigating shareholder derivative lawsuits, securities class actions, merger and acquisition actions, and consumer rights actions, obtaining well over a billion dollars in recoveries for clients and class

members.   The firm is comprised of highly-skilled litigators who have secured excellent recoveries in shareholder derivative actions.   BES has performed substantial work in identifying and investigating the claims in this action, and possesses the requisite experience, knowledge, and resources required to pursue this action to a successful conclusion.   BES has the financial resources to fully prosecute this action, as it has done in similar actions many times over.   BES's firm resume is submitted herewith as Exhibit B and reflects the firm's credentials and significant experience in this regard.

Of particular note to this litigation, BES has successfully prosecuted and tried numerous shareholder derivative actions.   For example, in *In re Activision Blizzard, Inc. Stockholder Litigation*, 124 A.3d 1025 (Del. Ch. 2015), BES, as co-lead counsel, represented investors alleging that Activision's Chief Executive Officer and Chairman put their own interests over those of other shareholders when an investment vehicle they controlled bought more than $2 billion worth of stock concurrent with Activision's $5.8 billion equity buyback from its former majority stakeholder.   On the eve of trial, the firm secured a settlement of $275 million, by far the largest monetary settlement in the history of the Delaware Court of Chancery and the largest cash derivative settlement in the country.   In addition, the settlement provided significant corporate governance benefits to the class.   Vice Chancellor J.

Travis Laster stated, "Lead Counsel brought a particular blend of expertise, initiative, and ingenuity to the case.  In my view, few litigation teams could have achieved this result against the determined, well-represented, and aggressive adversaries that Lead Counsel faced."

BES, as lead counsel, also prosecuted and successfully tried claims on behalf of El Paso Pipeline Partners, L.P., a public Master Limited Partnership, and its unaffiliated partners against its general partner and sponsor, El Paso Corporation (now merged into Kinder Morgan, Inc.) in *In re El Paso Pipeline Partners, L.P. Derivative Action*, Case No. 7141-VCL (Del. Ch.).  The claims arose out of a 2010 "drop down" of certain pipeline assets from the general partner to the partnership. Following trial, the Court of Chancery found that the Special Committee that recommended approval of the transaction did not form a subjective belief that the transaction was in the best interests of the partnership and, therefore, that the general partner breached the partnership agreement by engaging in the transaction.  The Court of Chancery found that the partnership was harmed in the amount of $171 million.  On February 4, 2016, the Court of Chancery entered final judgment in favor of the unaffiliated limited partners of El Paso Pipeline Partners, L.P., and against its general partner in the amount of $100 million, plus pre- and post-judgment interest.

21

BES also served as co-lead counsel in two recent matters that generated substantial benefits for the subject companies.  In *Mesirov v. Enbridge Energy Co., Inc.*, C.A. No. 11314-VCS (Del Ch.), BES prosecuted derivative claims which a special committee of the Enbridge Energy Partners, L.P. board of directors valued at $111.2 million – resulting in an increased exchange ratio for the partnership and its public investors.  In *In re Third Avenue Trust Shareholder and Derivative Litigation*, C.A. No. 12184-VCL (Del. Ch.), BES negotiated a $25 million settlement arising out of the collapse of an open-ended mutual fund.

In sum, the experience and prior success of BES unquestionably demonstrates the competence of the firm to lead this litigation.  The firm possesses the financial resources, personnel, and substantive expertise necessary to litigate the case vigorously, and has served, and will continue to serve, the best interests of the Derivative Plaintiffs and the Company while at the same time achieving the efficiencies required by the core principles of shareholder representative litigation.

## III.   CONCLUSION

For the foregoing reasons, Derivative Plaintiffs respectfully request that the Court enter the attached proposed order consolidating the captioned actions and appointing Johnson Fistel and BES as Lead Counsel for Derivative Plaintiffs.[5]

Respectfully submitted this 21st day of August, 2020.

**JOHNSON FISTEL, LLP**

By:  */s/ Michael I. Fistel, Jr.*
Michael I. Fistel, Jr.
Georgia Bar No.: 262062
William W. Stone
Georgia Bar No.: 273907
40 Powder Springs Street
Marietta, GA 30064
Telephone: (770) 200-3104
Facsimile: (770) 200-3101
Email: michaelf@johnsonfistel.com
williams@johnsonfistel.com

*Attorneys for Joe Tharayil and*
*Proposed Lead Counsel for Plaintiffs*

---

[5] The parties in the Palmer Action jointly filed a Joint Motion to Stay Litigation and [Proposed] Order on July 17, 2020, which the Court entered on July 20, 2020.  *See* Palmer Action, ECF Nos. 27-28.  Pursuant to the Court's Order, the Palmer Action is currently stayed pending the earlier of (i) any of the defendants in the Related Securities Class Action filing an answer to the operative complaint, or (ii) the deadline for appealing a dismissal of the Related Securities Class Action with prejudice.  *See* Palmer Action, ECF No. 28.  Upon consolidation of the Derivative Actions, the parties agree that the consolidated action shall remain stayed under the same terms as set forth in Court's order in the Palmer Action.  *Id*.

**BRAGAR EAGEL & SQUIRE, P.C.**

By: */s/ Melissa A. Fortunato*
       Melissa A. Fortunato
       Marion C. Passmore
       580 California Street, Suite 1200
       San Francisco, CA 94104
       Telephone: (415) 564-2124
       Facsimile: (212) 214-0506
       Email: fortunato@bespc.com
               passmore@bespc.com

**HYNES & HERNANDEZ, LLC**
Michael J. Hynes
Ligaya T. Hernandez
101 Lindenwood Drive, Suite 225
Malvern, Pennsylvania 19355
Telephone:  (484) 875-3116
Facsimile:   (914) 752-3041
Email: mhynes@hh-lawfirm.com
       lhernandez@hh-lawfirm.com

*Attorneys for Tom Palmer and*
*Proposed Lead Counsel for Plaintiffs*

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ Michael I. Fistel, Jr.*
Michael I. Fistel, Jr.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August, 2020, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing and make available the same to all attorneys of record.

*/s/ Michael I. Fistel, Jr.*
Michael I. Fistel, Jr.
